# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-14-945

SHARON SIMS

APPELLANT

V.

ARKANSAS DEPARTMENT OF
HUMAN SERVICES

APPELLEE

**Opinion Delivered** FEBRUARY 25, 2015

APPEAL FROM THE PULASKI
COUNTY CIRCUIT COURT,
EIGHTH DIVISION
[NO. 60JV2013-1011]

HONORABLE WILEY A. BRANTON,
JR., JUDGE

AFFIRMED; MOTION TO
WITHDRAW GRANTED.

## CLIFF HOOFMAN, Judge

Appellant Sharon Sims appeals from the order of the Pulaski County Circuit Court

terminating her parental rights to her three children, A.B., J.A., and J.R.[1] Sims's attorney has

filed a no-merit brief and a motion to withdraw as counsel pursuant to Arkansas Supreme

Court Rule 6-9(i) (2014) and *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark.

131, 194 S.W.3d 739 (2004). The clerk of this court mailed a certified copy of counsel's

motion and brief to Sims's last known address informing her of her right to file pro se points

for reversal; however, she has not done so.[2] We grant counsel's motion to withdraw and

---

[1]Although the circuit court's order also terminated the rights of Quentia Bailey, putative father of A.B.; Rashad Abdullah, father of J.A.; and Jonathan Farr, putative father of J.R., they are not parties to this appeal.

[2]The packet was mailed to Sims on December 10, 2014, at the address that was noted on the certificate of service attached to counsel's motion to withdraw; however, the packet was returned marked "Unable to Forward," and counsel has no additional contact

affirm the order of termination.

On May 31, 2013, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody of then five-year-old A.B., three-year-old J.A., and one-year-old J.R. In the affidavit attached to the petition, DHS stated that the three children were found home alone on May 29, 2013, after the police were contacted by a neighbor who had seen one of the children wandering around the apartment complex where they lived at approximately 11:00 p.m. The affidavit indicated that Sims returned home after the police arrived and admitted that she left the children unattended while she went to Wal-Mart to buy groceries. However, the police officer noted that Sims was not carrying any bags of groceries when she returned. Sims was arrested for child endangerment, and DHS placed a seventy-two-hour hold on the children because they had no legal caretaker.

The circuit court granted DHS's petition for emergency custody on May 31, 2013, and on June 28, 2013, the court entered an order finding that probable cause existed for removal of the children. The parties stipulated that the children were dependent-neglected due to neglect and parental unfitness at the adjudication hearing held on July 9, 2013. Sims remained incarcerated for the child-endangerment charges at the time of the hearing, and the circuit court ordered that reunification services be initiated and completed once she was released. The court ordered that Sims submit to a psychological evaluation, attend parenting classes, participate in individual counseling, obtain and maintain stable housing and income, refrain from illegal drug use, submit to random drug screens, and have supervised visitation with the

information for Sims.

2

 

children on a weekly basis.

A review hearing was held in November 2013, and the circuit court found that Sims had not complied with the case plan. She had been released from jail in August but had attended only two out of six counseling sessions. Sims also tested positive for illegal drugs, including Methadone, THC, benzodiazepine, and PCP, on five separate occasions between August and the time of the November hearing. She remained unemployed and was residing at a women's shelter. The court noted that Sims was scheduled to begin thirty days of inpatient drug treatment subsequent to the hearing.

The permanency-planning hearing was held in April 2014, but Sims failed to appear despite notice of the hearing. The court found that Sims had completed inpatient drug treatment in December 2013 and that it had been recommended that she enter and complete outpatient treatment at a chem-free home, although she had failed to do so. The court noted that Sims had tested positive for THC, benzodiazepines, and cocaine on February 26, 2014, and that she had not contacted DHS or visited with her children since that date. The goal of the case was changed to termination of parental rights and adoption.

DHS filed a petition for termination of Sims's parental rights on May 19, 2014, and alleged five separate grounds for termination with respect to Sims under Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2013): (1) that juveniles have been adjudicated by the court to be dependent-neglected and have continued out of the home for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the home and correct the conditions which caused removal, those conditions have not been remedied by the parent; (2) that

subsequent to the filing of the original petition for dependency-neglect, other factors or issues arose that demonstrate that return of the juveniles to the custody of the parent is contrary to the juveniles' health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent return of the juveniles to the custody of the parent; (3) that the parent had subjected the juveniles to aggravated circumstances; (4) that the juveniles have lived outside the home of the parent for a period of twelve months and the parent has willfully failed to provide significant material support in accordance with the parent's means or to maintain meaningful contact with the juveniles; and (5) that the parent has abandoned the juveniles.

The termination hearing was held on July 1, 2014. Andrew Beavers, a counselor with Recovery Centers of Arkansas, testified that Sims completed the inpatient drug treatment program on December 16, 2013. He stated that she then entered the outpatient program on January 8, 2014, but did not complete the treatment. Beavers testified that his last contact with Sims was in March 2014. The DHS caseworker, Willie Baker, testified that Sims had completed parenting classes. However, in addition to not completing outpatient drug treatment, Sims had failed to complete her psychological evaluation and to obtain or maintain stable housing or employment. Baker stated that Sims had also failed to maintain contact with DHS and had only visited her children once since the last hearing. Baker further testified that Sims had tested positive for illegal drugs on two occasions in May 2014. According to Baker, Sims had not made substantial progress toward reunification, and it would be harmful to the

children to return custody to her due to her instability, poor decision making, and continued drug usage. Baker testified that the children were adoptable and that there were potential adoptive placements that had been identified for them.

Sims testified that she was currently living at Children and Women First shelter. She indicated that she was kicked out of the chem-free housing on February 26, 2014, because of disorderly conduct. Sims stated that she was not receiving drug treatment at the time of the hearing, although she was attending a weekly discussion meeting. Sims admitted, however, that she had used drugs as recently as three weeks prior to the termination hearing. She testified that she had quit her most recent employment because she did not have transportation. According to Sims, the shelter where she was residing had offered to assist her, and she believed that she would be ready to have her children returned within sixty days. She asked the court to dismiss the termination petition and to allow her more time to reunify with her children.

Following the hearing, the circuit court entered an order on August 6, 2014, finding that there was clear and convincing evidence to support termination of Sims's parental rights on all five grounds alleged in the petition and that termination was in the children's best interest. Sims filed a timely notice of appeal from the circuit court's decision. Her counsel has filed a no-merit brief, in which she contends that there are no meritorious issues for appeal.

There was only one adverse ruling with respect to Sims during the termination hearing, and that was the circuit court's decision to terminate her parental rights. While counsel also discusses Sims's request at the conclusion of the hearing to dismiss the petition and give her

SLIP OPINION

additional time to reunify with her children, this is related to the issue of whether there was sufficient evidence to support the termination order. Thus, these rulings will be discussed together.

A trial court's order terminating parental rights must be based upon findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2013); *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Dinkins*, *supra*. On appeal, the appellate court will not reverse the trial court's ruling unless its findings are clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id*. In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Id*.

Pursuant to Ark. Code Ann. § 9-27-341(b)(3), an order terminating parental rights shall be based upon a finding by clear and convincing evidence that it is in the best interest of the juvenile, including consideration of the likelihood of adoption and the potential harm, specifically addressing the effect on the health and safety of the child, caused by continuing contact with the parent. The order terminating parental rights must also be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in Ark. Code Ann. § 9-27-341(b)(3)(B).

The circuit court's order in this case found clear and convincing evidence to support

SLIP OPINION

all five grounds alleged in the termination petition that were pertinent to Sims. However, as counsel notes, only one ground must be proved to support termination, and counsel therefore discusses only the evidence supporting the subsequent-issues ground. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). In order to satisfy this ground, DHS had to prove that "other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent." Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*a*).

A.B., J.A., and J.R. were initially removed from Sims's custody based on the fact that there was no legal caretaker for them after her arrest, and they were adjudicated dependent-neglected due to her neglect and parental unfitness. However, subsequent to the adjudication hearing, when Sims was no longer incarcerated, it became apparent that she had a serious substance-abuse problem. Despite the offer of appropriate services such as counseling, inpatient and outpatient drug treatment, parenting classes, a psychological evaluation, visitation, transportation, and drug screening, Sims failed to comply with the case plan and the court's orders. She did not complete her drug treatment, her psychological evaluation, or her counseling; she failed to maintain contact with DHS; she failed to consistently visit her children; and she did not maintain stable housing, income, or employment. Furthermore, Sims

continued to test positive for illegal drugs throughout the case, and she admitted that she had used marijuana three weeks prior to the termination hearing. This evidence demonstrates that Sims was incapable or indifferent to rehabilitating her circumstances such that her children could be returned to her custody, and we agree that there could be no meritorious argument raised on appeal with respect to the grounds for termination.

In addition, the circuit court's finding that termination was in the best interest of the children was also supported by the evidence. The court found that there was a risk of harm to the children if they were returned to Sims because she was unstable and unfit as a parent. With regard to Sims's request that she be allowed more time to pursue reunification, the circuit court found that her testimony that she would be ready to parent her children within sixty days was not credible and that she would need to establish at least six months to a year of stability and compliance for the court to consider returning the children. The court found that there was no compelling reason to give Sims more time and that reunification could not occur within a time frame that was consistent with the children's developmental needs. The circuit court further found that the children were adoptable based on the case worker's testimony. Thus, there would be no merit to an appeal challenging the sufficiency of the evidence supporting the termination order.

Although it is not discussed by counsel, there is one additional adverse ruling that occurred prior to the termination hearing, when the circuit court granted DHS's motion to suspend visitation. This motion was filed at the same time as the petition for termination, and DHS argued that it was in the children's best interest that visitation be suspended because Sims

had not visited her children for several months and her parental rights might soon be terminated. The record does not reflect that Sims responded to the motion, and an order suspending visitation was entered on June 16, 2014.

In no-merit termination appeals, we must examine the entire record to determine whether sufficient evidence supports the circuit court's decision when the court takes judicial notice of prior orders and testimony in the case; however, we only review the adverse rulings that occurred during the termination proceeding itself. *Lewis v. Ark. Dep't of Human Servs.*, 364 Ark. 243, 217 S.W.3d 788 (2005). The stated rationale for this review is that an appellant had the opportunity to appeal from adverse rulings that occurred during the earlier hearings, such as the adjudication, review, and permanency-planning hearings, under Ark. R. App. P.–Civ. 2(c)(3) (2014). *Id.*

Here, the order suspending visitation was entered between the time of the filing of the termination petition and the hearing; therefore, Sims would not have had another opportunity to appeal this ruling. For this reason, we treat the order as an adverse ruling that must be reviewed pursuant to Ark. Sup. Ct. R. 6-9(i). While Sims's counsel failed to discuss this order, we do not require rebriefing where the issue is one that would clearly not be meritorious on appeal. *Lewis*, *supra*; *Cheney v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 209, 396 S.W.3d 272. Given the evidence in this case regarding Sims's failure to contact or visit her children for several months, her continued drug addiction, and the fact that the petition for termination had already been filed, there would be no merit to an appeal on this issue.

Based on our review of the record and the brief submitted, we conclude that counsel



has complied with Ark. Sup. Ct. R. 6-9(i) and agree that the appeal is without merit.

Therefore, we affirm the termination order and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

ABRAMSON and HIXSON, JJ., agree.

*Suzanne Ritter Lumpkin*, Arkansas Public Defender Commission, for appellant.

No response.