....
(ix)(a) The parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to:
(3)(A) Have subjected any juvenile to aggravated circumstances.
(B) "Aggravated circumstances" means:
(i) .. [A] determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification.
In the termination order, the trial court stated that Anita had partially complied but had relapsed and had not shown an ability to maintain stability. The trial court found that Anita habitually relapsed into drug use during the case, admitting she had used drugs in August, October, and December 2017, and in January 2018. The trial court noted that while Anita was not presently incarcerated, she remained on a suspended sentence that potentially exposed her to a lengthy prison sentence. The trial court found that despite this fact, Anita continued to commit the criminal act of using drugs, which could cause her suspended sentence to be revoked and her sent to the Arkansas Department of Correction.
Anita testified on her own behalf at the termination hearing. She stated that, as a result of her drug convictions, she remained incarcerated from the time her children were removed in March 2016 until April 2017. Anita testified that when she was released from prison she entered an outpatient drug-treatment program, which she completed in December 2017. Anita stated that she has a recovery coach, Karen Wilson, who has helped her ever since her release from prison.
Anita testified that despite undergoing drug treatment, she relapsed into drug use in August 2017. Anita stated that when she relapsed she did not tell DHS or her recovery coach. Anita's relapse consisted of using methamphetamine, alcohol, and marijuana. Anita had trial custody of her children for several weeks between late October and December 2017. She maintained, however, that she did not use methamphetamine when her children were at home. After Anita tested positive for methamphetamine on a hair-follicle test on December 5, 2017, Anita's relapse was discovered *415 and the trial placement was discontinued. Anita also tested positive for methamphetamine on a hair-follicle test on April 12, 2018, which was just eleven days before the termination hearing. Anita admitted using methamphetamine in August and early October 2017, and in December 2017 after the children were removed from her custody. However, Anita maintained that she had not used drugs since January 2018 and that she had not used methamphetamine for 102 days. She suggested that the positive hair-follicle test in April 2018 was detecting her drug use from a few months prior.
Anita testified that she entered a residential drug-treatment program in January 2018. She stated that she completed the residential part of the program and was presently in a transitional-living facility. Anita did not have her own housing but stated that she is allowed to have HUD housing and that her counselor could help her find a place to live. Anita stated that she has had four different jobs over the past year and presently works at a grocery store. Anita does not have a driver's license or her own transportation. Anita admitted that she began using drugs thirteen years ago, and she stated that she did not feel like anyone with the disease of addiction is ever completely rehabilitated. She also acknowledged that the terms of her suspended sentence prohibited illegal drug use, and that an infraction could result in her going back to prison. However, she felt like she had the tools she needed to go forward and do well. Anita asked the trial court to not take her children away from her and to give her more time to get back on her feet.
Christine Clark, a mental-health counselor, is M.H.'s therapist. Ms. Clark testified that M.H. has been diagnosed with PTSD and adjustment disorder. Ms. Clark indicated that after the trial placement with her mother, M.H. began having problems that she was not having before the placement, including failing grades and disruptive behavior. Ms. Clark testified that M.H. is adoptable and that it would probably be best to terminate Anita's parental rights.
Kathy Patton, also a mental-health counselor, is B.M.'s and F.M.'s therapist. Ms. Patton testified that both B.M. and F.M. have adjustment disorder and behavioral problems. According to Ms. Patton, B.M. told her that during the trial placement with his mother, Anita did not do much with them, and they spent a lot of time taking care of themselves. B.M. told Ms. Patton that his mother stayed on her phone a lot and looked kind of "zoned out." Ms. Patton indicated that the children need a stable, consistent home. She stated that both B.M. and F.M. are adoptable and that if it was her decision she would terminate parental rights.
Shannon Kelleher is a CASA worker assigned to the case. Ms. Kelleher stated that she made home visits at Anita's apartment during Anita's trial custody of the children, and that during these visits she saw some things that caused her concern. On one occasion, she saw a beer bottle in the kitchen. Ms. Kelleher further testified that she saw a Facebook video narrated by Anita showing Anita drinking wine at a party with her children there with her. In the video, Anita commented that she did not have any Sunday beer because she had drunk it Saturday night. Ms. Kelleher stated that around that time, Anita stopped letting her in her home. Ms. Kelleher stated that the case had gone on for more than two years and that the children need permanency, and she recommended termination of Anita's parental rights.
Karen McLaughlin is the foster-care supervisor assigned to the case, and she testified that DHS was also recommending *416 termination of Anita's parental rights. Ms. McLaughlin testified that DHS had provided extensive services to Anita and that Anita has had a lot of support in this case. Ms. McLaughlin stated that Anita had never had her own transportation throughout the case and presently has no home where the children could live. Although Anita completed parenting classes, Ms. McLaughlin stated that she did not demonstrate the skills she was taught during her visits with the children. Nor had Anita maintained sobriety as ordered by the trial court. Ms. McLaughlin believed that the children would be at risk of both psychological and physical harm if returned to their mother. She based this opinion on Anita's drug relapse, dishonesty, lack of stability, and lack of ability to provide a home for the children. Ms. McLaughlin believed the juveniles are adoptable but stated that even if they were not adoptable, the risk of harm in returning them to Anita would be so great as to outweigh the issue of adoptability.
Anita called two witnesses on her behalf. The first was Karen Wilson, who works within the Restore Hope drug-rehabilitation program and is Anita's recovery coach. Ms. Wilson assists Anita with anything that needs to be done, including treatment, housing, employment, and transportation. Ms. Wilson stated that she did not know about Anita's drug relapse until Anita tested positive in December 2017 and that she had not seen Anita in the two months before that. After the positive test result, Anita called Ms. Wilson and was devastated, stating that she felt like a complete failure. According to Ms. Wilson, Anita's attitude was that she could not get to rehab fast enough, and she reentered rehab without an assessment or a referral. Ms. Wilson stated that she will continue to work with Anita as long as is necessary and that, other than the relapse period, Anita has always been responsive and followed her advice and suggestions.
Kaela Bowles is Anita's counselor at the treatment facility. Ms. Bowles testified that Anita had completed her inpatient drug rehabilitation and was in a transitional facility, but that she could leave at any time and find her own housing. Ms. Bowles stated that Anita was fully compliant with all of her requirements and that, although she did not know for sure, she believed Anita could maintain sobriety when she leaves the facility.
On appeal from the termination of her parental rights, Anita does not challenge the statutory grounds supporting termination. Instead, her only argument is that there was insufficient evidence that termination was in the children's best interest. Specifically, Anita claims that there was a complete lack of evidence to support the trial court's finding that the children would be subjected to potential harm if returned to her custody.
Anita acknowledges her relapse into methamphetamine use during the case. However, she maintains that she relapsed during the three months leading up to the trial placement, that she did not use methamphetamine during the trial placement,[3] and that she used methamphetamine again only after the children were removed from her custody in December 2017. Anita asserts that, aside from these relapses, she was complying with the case plan and making marked progress in the case. Anita *417 further asserts that after her most recent relapse in December 2017, she completed an inpatient drug program. She testified that the last time she had used methamphetamine was 102 days before the termination hearing. Anita also relies on the testimony of her counselor who believed that Anita could maintain sobriety and be successful if she moved into her own housing. Anita asserts that she has taken control of her life and has demonstrated that she can parent her children without a risk of harm. Anita maintains that, at the very least, the trial court erred in not giving her additional time to show she is capable of maintaining sobriety and raising her children. For these reasons, she argues that the termination of her parental rights should be reversed.
We hold that the trial court's potential-harm finding was not error; nor did the trial court clearly err finding that termination was in the children's best interest. In considering potential harm caused by returning a child to the parent, the trial court is not required to find that actual harm would result. Furnish v. Ark. Dep't of Human Servs. , 2017 Ark. App. 511, 529 S.W.3d 684. Potential harm must be viewed in broad terms, including the harm the child suffers from the lack of stability in a permanent home. Id. We have held that continued drug use demonstrates potential harm sufficient to support a best-interest finding in a termination-of-parental-rights case. Tillman v. Ark. Dep't of Human Servs. , 2015 Ark. App. 119, 2015 WL 831629. Moreover, a court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody. Furnish, supra.
The children were initially removed from Anita's custody when she was arrested and incarcerated for drug offenses, including possession of methamphetamine with intent to deliver. Upon Anita's release from prison, she was equipped with an excellent support system and completed a drug-rehabilitation program. However, during the period of this rehabilitation program, Anita relapsed into using methamphetamine. After this relapse was detected by a hair-follicle test and the children were removed from Anita's custody, she responded to the removal of her children by using methamphetamine, alcohol, and marijuana. Although Anita subsequently entered another drug-rehabilitation program and claimed at the termination hearing to have been sober for 102 days, the case had been open for more than two years, and the trial court properly considered Anita's admitted instances of illegal drug use during the case.
The purpose of the termination-of-parental-rights statute is to provide permanency in a juvenile's life in all instances in which the return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare, and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time, as viewed from the juvenile's perspective. Ark. Code Ann. § 9-27-341(a)(3). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. Shaffer v. Ark. Dep't of Human Servs. , 2016 Ark. App. 208, 489 S.W.3d 182.
There was testimony that the children involved in this case are adoptable and in need of permanency. At the time of the termination hearing, which was more than two years after the children's removal, Anita lacked a stable home and had a long history of drug use. During the case Anita was given the opportunity to remedy her drug issues but instead relapsed into continued drug use. The record supports the *418 trial court's finding that the children would be subjected to potential harm if returned to Anita's custody, and we conclude that the termination of her parental rights was not clearly erroneous.
Affirmed.
Gruber, C.J., and Brown, J., agree.

In addition to Anita's testimony that she did not use drugs during this trial-placement period, Anita notes that her drug screens during this time frame were negative. Although Anita tested positive for methamphetamine on a hair-follicle test on December 5, 2017, when the children were in her trial custody, she claims that this test detected pre-placement drug use.