Cite as 2019 Ark. App. 415

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CV-19-339

| | | |
|---|---|---|
| JESSICA BEAIRD | | **Opinion Delivered:** September 25, 2019 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI |
| V. | | COUNTY CIRCUIT COURT, TENTH |
| | | DIVISION |
| ARKANSAS DEPARTMENT OF | | [NO. 60JV-18-85] |
| HUMAN SERVICES AND MINOR | | |
| CHILD | | HONORABLE JOYCE WILLIAMS |
| | APPELLEES | WARREN, JUDGE |
| | | |
| | | AFFIRMED; MOTION TO |
| | | WITHDRAW GRANTED |

## PHILLIP T. WHITEAKER, Judge

Jessica Beaird appeals a Pulaski County Circuit Court order terminating her parental rights to her infant son, D.B.[1] Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i) (2018), Beaird's counsel has filed a motion to be relieved as counsel and a no-merit brief asserting that there are no issues of arguable merit to support an appeal. The clerk of our court sent copies of the brief and the motion to withdraw to Beaird informing her of her right to file pro se points for reversal pursuant to Rule 6-9(i)(3); she has not done so.

Counsel's brief contains an abstract and addendum of the proceedings below and states that the only ruling adverse to Beaird was the termination of her parental rights. Counsel asserts that there was sufficient evidence to support the termination. *See Linker-*

---

[1]In the initial petition for ex parte emergency custody and dependency-neglect, the child was identified as TB.

*Flores, supra*; Ark. Sup. Ct. R. 6-9(i). We agree that there are no issues of arguable merit on which to base an appeal. We provide the following summary of facts and procedural history in support of our conclusion.

Beaird gave birth to D.B. in January 2018. At the time of delivery, Beaird tested positive for amphetamines. D.B.'s urine was negative, but a subsequent meconium test was positive for illegal substances. Beaird denied drug usage but had outbursts at the hospital and would not cooperate with hospital staff. The hospital contacted the Arkansas Department of Human Services (DHS). DHS attempted to set up a team decision-making meeting with Beaird at the hospital, but she refused to cooperate. The DHS caseworker also attempted several times to contact the child's father, Clifton Beaird,[2] but was unable to do so. DHS then exercised a seventy-two-hour hold on newborn D.B. and initiated a dependency-neglect proceeding in the circuit court.

At the probable-cause hearing, the court was informed of Beaird's previous contact with DHS. Beaird had been involved with DHS on four separate occasions. Two of those occurrences took place in 2007 and 2015 and involved allegations of newborns testing positive for illegal substances. Both of those cases resulted in the termination of her parental rights.

At the adjudication hearing, Beaird stipulated that D.B.'s dependency-neglect was based on neglect (Garrett's law) and parental unfitness by the mother, because the juvenile

---

[2]Clifton Beaird consented to the termination of his parental rights; therefore, he is not a party to this appeal, and the facts as they relate to him have not been included except to the extent they relate to the termination of the mother's rights.

tested positive for amphetamines and methamphetamine at the time of his birth. The trial court adjudicated D.B. dependent-neglected on the basis of this stipulation and the results of the child's meconium test, which were positive for illegal substances. Of significance, the court found, on the basis of the mother's testimony at the hearing, that she was not being honest with the court and was not credible when she testified about her previous drug usage. Nevertheless, the court set the goal as reunification and directed DHS to provide reunification services to Beaird.

Subsequently, the court conducted additional hearings and made findings concerning Beaird's compliance with the case plan and court orders. In particular, the court found that DHS had provided appropriate services but found that Beaird had only partially complied. Despite the provision of appropriate services, Beaird had tested positive on a drug screen, had possibly tampered with the results of other drug screens, had not entered or completed inpatient substance-abuse treatment, and had not submitted to a hair-shaft drug test or other drug screens when directed by DHS. Additionally, the court noted that Beaird was no longer employed and had stopped going to counseling for a time. While she had visited with the juvenile, she exhibited inappropriate behavior during some of the visits.[3] The court found that she had not demonstrated any progress toward the goals of the case plan and had made minimal progress toward alleviating or mitigating the causes of the child's removal.

---

[3]The court heard testimony that Beaird had cursed and threatened DHS staff; that during some visits she had been aggressive, agitated, and angry; and that she had fallen asleep during others. She also gave three-month-old D.B. inappropriate food items during a visit.

In September 2018, DHS and the attorney ad litem (AAL) filed a joint petition for termination of parental rights alleging three grounds for termination: (1) subsequent other factors; (2) aggravated circumstances—little likelihood of successful reunification; and (3) prior involuntary termination. The court conducted a termination hearing in January 2019. After the hearing, the trial court entered an order terminating Beaird's parental rights on two statutory grounds for termination: subsequent other factors and prior involuntary termination.[4] The court further found that it was in D.B.'s best interest to terminate Beaird's parental rights, noting that D.B. had been in DHS custody for all but two days of his life, that Beaird had not done the things that would be necessary for her to be a fit parent and have the child returned to her, and that D.B. is adoptable.

We review termination-of-parental-rights orders de novo but will not reverse the trial court's findings of fact unless they are clearly erroneous. *Harjo v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 268, 548 S.W.3d 865. A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left on the entire evidence with the firm conviction that a mistake has been made. *Id.* We must defer to the superior position of the trial court to weigh the credibility of the witnesses. *Ewasiuk v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 59, 540 S.W.3d 318. On appellate review, this court gives a high degree of deference to the trial court, which is in a far superior position to observe the parties before it. *Id.* Termination of parental rights is an extreme remedy and in derogation

---

[4]The court erroneously identifies this ground as an "aggravated circumstances" ground. This ground is a separate ground, however, and does not fall under the purview of aggravated circumstances under the statute.

4

of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id*.

Pursuant to Arkansas Code Annotated section 9-27-341(b)(3) (Supp. 2017), an order forever terminating parental rights shall be based on a finding by clear and convincing evidence that there are one or more statutory grounds. Counsel states in her no-merit brief that any argument challenging the statutory grounds for termination would be wholly frivolous because there was sufficient evidence to support the trial court's finding of aggravated circumstances—little likelihood for successful reunification. While that statutory ground was pled in the petition, the trial court did not make a specific finding on the aggravated-circumstances ground cited by counsel. Instead, the trial court made findings as to the two other statutory grounds pled in the petition: subsequent other factors (Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*) and previous involuntary termination (Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(4)*). We conclude, however, that counsel's error is not fatal in this case.

In termination-of-parental-rights cases, we must complete a de novo review of the record, and a failure of counsel to list and discuss all adverse rulings will not necessarily result in automatic rebriefing. *See Sartin v. State*, 2010 Ark. 16, 362 S.W.3d 877; *Houseman v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 227, 491 S.W.3d 153 (affirming without rebriefing). *But see Kloss v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 121; *Bentley v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 125 (rebriefing ordered). Having completed our de novo review, we conclude that the trial court was not clearly erroneous in its conclusion that statutory grounds for termination existed. Here, it is undisputed that on two separate

occasions, Beaird's parental rights to two other children were involuntarily terminated. Thus, the prior-involuntary-termination ground was conclusively satisfied. Because only one ground of section 9-27-341(b)(3)(B) need be proved to support termination, there can be no meritorious argument for challenging the trial court's finding of statutory grounds. *Sims v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 137, at 7.

Next, counsel states in her no-merit brief that any argument challenging the trial court's "best interest" findings would be wholly frivolous. Pursuant to Arkansas Code Annotated section 9-27-341(b)(3), an order forever terminating parental rights shall be based on a finding by clear and convincing evidence that it is in the best interest of the juvenile, including consideration of the likelihood that the juvenile will be adopted and the potential harm to the health and safety of the juvenile if returned to the custody of the parent. In its order, the court specifically found that it had considered adoptability and potential harm to the child. Thus, the court considered both best-interest factors.

As to the adoptability, Jessica Warren, an adoption specialist, testified there were 294 adoption resources found for D.B. She stated that to her knowledge, there were not any health, developmental, or other issues that would be a barrier to his adoption. Our appellate courts have repeatedly held that the testimony of an adoption specialist is sufficient to support a trial court's adoptability findings. *Whitaker v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 61, at 15, 540 S.W.3d 719, 728. Accordingly, Warren's testimony was sufficient to support the trial court's adoptability finding in this case.

As to potential harm, the court found that Beaird was unfit and that it would be a travesty to return the child to her. We conclude that the trial court was not clearly erroneous

in its conclusion concerning potential harm. Beaird has a serious and ongoing drug addiction that has resulted in the termination of her parental rights to not only this child but also to two other children. A parent's past behavior is often a good indicator of future behavior. *Schaible v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 541, 444 S.W.3d 366. Despite this, Beaird continued to deny her drug problem, and she failed to complete drug treatment despite treatment referrals on numerous occasions. We have held that continued drug use demonstrates potential harm sufficient to support a best-interest finding in a termination-of-parental-rights case. *Middleton v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 97, at 11, 572 S.W.3d 410, 417. Additionally, Beaird admitted that she has a history of mental illness: PTSD, manic depression, and anorexia; but she failed to complete individual counseling. At the time of the termination hearing, Beaird was incarcerated on a parole hold. She admitted that this hold was due to new charges but contended that the new charges had been dropped.[5] The facts supporting potential harm, in conjunction with the evidence of adoptability, provided sufficient evidence for the trial court's best-interest finding.

Affirmed; motion to withdraw granted.

ABRAMSON and GLADWIN, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

One brief only.

---

[5]The new, allegedly dismissed charges were for criminal mischief and third-degree domestic battering of her mother. The original charge was for possession of methamphetamine.