Cite as 2025 Ark. App. 401

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-25-115

| | | |
|---|---|---|
| | | Opinion Delivered September 3, 2025 |
| TIFFANY AUSTIN | | |
| | APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72JV-24-159] |
| V. | | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | | HONORABLE STACEY ZIMMERMAN, JUDGE |
| | APPELLEES | AFFIRMED |

### N. MARK KLAPPENBACH, Chief Judge

Tiffany Austin appeals the Washington County Circuit Court order terminating her parental rights to her minor child (MC1). On appeal, Austin argues that there was insufficient evidence that termination was in MC1's best interest. We affirm.

The Arkansas Department of Human Services (DHS) took emergency custody of MC1 shortly after his birth in March 2024 due to the presence of illegal substances in his system. At the time of MC1's birth, Austin tested positive for methamphetamine, amphetamines, marijuana, and opiates. Austin admitted using THC daily during her pregnancy and using methamphetamine at least twice a month. At the time of MC1's birth, Austin's older child, MC2, was the subject of a different dependency-neglect case. MC2 had been in foster care since October 2022 following Austin's arrest on drug charges. Austin had completed a drug-and-alcohol assessment in MC2's case, and the resulting

recommendation was that she complete residential drug treatment, but she never went. MC1 was placed in the same foster home as MC2. Austin identified her boyfriend with whom she lived, Don Michael Guillory, as MC1's putative father.

At the probable-cause hearing, Austin testified that she would be flying to Florida in two days to attend a thirty-day rehab program, and she was unsure if she would return to Arkansas. Austin did not appear at the April 25, 2024 adjudication hearing. MC1 was adjudicated dependent-neglected due to neglect and parental unfitness, and the goal was set as reunification with a concurrent goal of adoption. The court ordered that Austin pass four random drug screens over four weeks before her supervised visits would resume. The court further found that DNA testing had excluded Guillory as MC1's father.

On July 8, 2024, DHS filed a petition to terminate Austin's parental rights. DHS alleged that Austin had failed to enter substance-abuse treatment as planned and had been arrested on two occasions. She was facing charges of possession of drug paraphernalia, possession of a controlled substance, fleeing, failure to appear, and probation revocation. She had been incarcerated since May 13 and had not participated in any reunification services in the case. Furthermore, Austin's parental rights to MC2 had been involuntarily terminated on March 28, 2024, and Austin had not appealed that decision. The termination order in that case evidenced Austin's complete lack of compliance and participation. Notably, she had appointments to begin inpatient treatment on four occasions but failed to appear.

The termination hearing began on October 2, 2024, and concluded on November 8, 2024.[1] Caseworker Nicole Netherton testified that in MC2's case, Austin eventually checked into rehab in October 2023, but she left after only a few days. She tested positive for methamphetamine and THC throughout the case despite becoming pregnant with MC1, and she did not visit consistently with MC2. When MC1 was taken into care, Austin did not enter rehab when she said she would, she did not consistently submit to random drug screens, she did not consistently visit MC1, and she did not consistently contact Netherton.

Austin finally entered rehab again on July 21, 2024, and the rehab facility informed caseworker Sharida Holloway that the plan was for her to stay sixty to ninety days depending on insurance approval. Ultimately, however, Austin was discharged after only twenty-eight days. She tested positive for THC after her discharge and stated that she had used drugs while in rehab. Austin had since entered drug court and had been consistently testing positive for THC. Accordingly, Austin had not passed the four drug screens necessary for her to have visitation with MC1. Holloway said that DHS still has concerns regarding Austin's sobriety and the possibility of relapse on methamphetamine.

MC1's foster mother testified that MC1 had been placed with her family since birth. She is also MC2's foster mother, and she said the children have a special bond. She said that MC1 was immunocompromised due to being exposed to Austin's drug use before birth,

---

[1]Austin identified a second putative father, Devin Harvey. DNA testing confirmed his paternity, and the court found he is MC1's father and added him to the case. The termination hearing did not apply to Harvey's parental rights.

and this had resulted in a susceptibility to infection. He also had feeding issues. The foster mother wants to adopt him if parental rights are terminated.

Austin testified that she was working part time at an inn earning about $500 biweekly, and she rented a room there for $500 a month. Sentencing orders were introduced showing that in October 2023, she was placed on three years' probation after pleading guilty to possession of a controlled substance, second-degree forgery, possession of drug paraphernalia, and failure to appear. In April 2024, she was charged with the new offense of possession of a controlled substance, and the State moved to revoke her probation. In May, she was charged with failure to appear, another charge of possession of a controlled substance, and fleeing. In July, she was released from jail, and her charges were transferred to drug court.

Austin testified that she had been sober from methamphetamine for 110 days since the date that she entered rehab in July. She said that she had last used marijuana twenty-eight days prior; however, she tested positive for marijuana on the day of the hearing. She said that she planned to surrender her medical marijuana card. Austin felt it was best for MC1 to remain in custody for the time being, but she did not want her parental rights terminated and wanted to resume visits. She acknowledged that her continued marijuana use had prevented her from passing the drug screens required to visit MC1. She testified that she would continue with drug court, was starting to see a psychiatrist, and would not return to drug use.

Austin's drug court probation officer and drug court counselor testified on her behalf. They testified that Austin had complied with the program's rules, which included submitting to random drug tests and attending group therapy and meetings. Marijuana use was not allowed in the program, but any consequences for continuing to test positive are left to the drug court judge. There was a recovery plan to address Austin's marijuana use, but her recent acquisition of a medical marijuana card was not consistent with the plan. Austin was in the fourth month of the program, which typically lasts fifteen months. She was ready to move on to phase two, but she would not be able to do so if she was actively using marijuana.

The circuit court terminated Austin's rights on the grounds that her rights had been involuntarily terminated as to MC1's sibling and that she had subjected MC1 to aggravated circumstances in that there was little likelihood that services would result in successful reunification. The court noted that she was only 110 days into her sobriety from methamphetamine and had continued to test positive for THC, which could subject her to criminal sanctions. Furthermore, she had failed to avail herself of services offered in MC2's case for more than fourteen months and, in this case, for more than six months.

We review termination-of-parental-rights cases de novo. *Middleton v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 97, 572 S.W.3d 410. At least one statutory ground must exist in addition to a finding that is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 (Supp. 2023). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Middleton*, *supra*. The appellate

inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

On appeal, Austin concedes that there was sufficient evidence of at least one statutory ground to support termination—the involuntary termination of her rights to MC1's sibling. She challenges only the best-interest determination. She argues that the case had been open for less than eight months at the time of termination and that she had been sober for nearly half the length of the case—110 days. She argues that her completion of a rehab program and ongoing treatment through drug court show significant progress rather than potential harm to MC1. She also argues that the court erred in its concern over her THC use subjecting her to criminal sanctions because no action had been taken thus far regarding her THC use. She contends that termination, rather than additional time to prove her sobriety, did not achieve permanency because MC1's father still had the opportunity to work toward reunification.

In considering potential harm caused by returning a child to the parent, the circuit court is not required to find that actual harm would result. *Middleton*, *supra*. Potential harm must be viewed in broad terms, including the harm the child suffers from the lack of stability in a permanent home. *Id.* We have held that continued drug use demonstrates potential harm sufficient to support a best-interest finding in a termination-of-parental-rights case. *Id.*

Moreover, a court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody. *Id.*

DHS notes that from the time her older child was taken into custody, Austin continued to use methamphetamine for twenty months, including throughout her pregnancy and after MC1 was taken into care, until finally entering treatment in July 2024 for twenty-eight days. While Austin claims it is speculative for the court to say her marijuana use could subject her to incarceration, the evidence established that it would prevent her from progressing in drug court, which could lead to incarceration. Furthermore, Austin had not abstained from drugs long enough to pass drug screens in order to have visitation with MC1. Her eleventh-hour efforts to rehabilitate herself do not outweigh the evidence of her prior noncompliance. *See Sharks v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 435, 502 S.W.3d 569. Regarding Austin's permanency argument, reunification with MC1's father may never occur. The evidence at the termination hearing showed that Harvey had used methamphetamine two days before the hearing, has a history of drug offenses, and had lost custody of another child in a dependency-neglect case. Given this evidence, we cannot say that the circuit court's best-interest determination is clearly erroneous.

Affirmed.

HARRISON and HIXSON, JJ., agree.

*Elizabeth James*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.