
# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-16-544

|  |  |
|---|---|
| TERIA SUTTON<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | Opinion Delivered October 5, 2016<br><br>APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT [NO. JV-2013-151]<br><br>HONORABLE RALPH WILSON, JR., JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Judge

Teria Sutton appeals the order of the Crittenden County Circuit Court that terminated her parental rights to her children M.S.1, D.S., A.S., and N.W.[1] Sutton challenges the statutory grounds for termination. We affirm.

In September 2013, the Arkansas Department of Human Services (DHS) exercised a seventy-two-hour hold on newborn A.S. and his four siblings after A.S. had been born with cocaine in his system. Sutton admitted to using cocaine approximately one week before A.S.'s birth and that she had been using cocaine for three or four years. Sutton was ordered to complete parenting classes, watch "The Clock is Ticking" video, obtain and maintain

---

[1] Michael Holliman is the putative father of M.S.1, and Labron Ward is the legal father of D.S., A.S., and N.W. Neither father is a party to this appeal. Sutton also has two other children, M.S.2 and M.S.3, but they are not parties to this case. M.S.3 has lived with a relative in Wisconsin since birth, and M.S.2 was placed in the custody of his grandmother in November 2014.

SLIP OPINION

stable housing, obtain and maintain stable employment, submit to a drug-and-alcohol assessment, and submit to random drug screens. The circuit court adjudicated the children dependent-neglected in November 2013 and noted that Sutton had completed parenting classes and submitted to random drug screens. Sutton tested negative for all substances on 25 September 2013 but tested positive for cocaine on 4 October 2013.

A January 2014 review order found that Sutton had obtained stable housing, completed parenting classes, watched "The Clock is Ticking" video, completed a drug-and-alcohol assessment, submitted to random drug screens, and was attending outpatient treatment. The order noted positive results for cocaine on October 10, October 31, and November 21. The court ordered Sutton to submit to a second drug-and-alcohol assessment and follow the recommendations. An April 2014 review order noted that Sutton had cancelled the second drug and alcohol assessment scheduled on February 10.

On 20 October 2014, DHS filed a petition for emergency custody of Sutton's newborn baby, N.W., born 11 October 2014. The supporting affidavit noted that Sutton was currently incarcerated at the Regional Punishment Facility in Pine Bluff and that there was no appropriate caretaker for the baby. The circuit court ordered N.W. into DHS custody and later adjudicated him dependent-neglected.

The court entered its fifteen-month review order in December 2014 and changed the goal of the case to adoption. The order noted that Sutton was currently incarcerated, had not completed her second drug-and-alcohol assessment, and was not consistent with visitation prior to being incarcerated. In June 2015, a review order indicated that Sutton's expected release date was 1 July 2015.

DHS filed a petition for termination of parental rights in June 2015; however, this petition was dismissed without prejudice in December 2015 due to lack of proper service on Sutton. DHS filed a second petition for termination of parental rights in January 2016; the statutory grounds alleged were (1) the "out-of-custody-for-twelve-months and failure-to-remedy" ground, (2) willful failure to provide material support or meaningful contact for at least one year, (3) the "subsequent factors" ground, and (4) being sentenced in a criminal proceeding for a substantial period of time in the child's life.

At the termination hearing in March 2016, Bessie Hatchett, the DHS supervisor on the case, testified that Sutton had been incarcerated from June 2014 to August 2015 and that she now lives in Pulaski County. Hatchett testified that Sutton had not visited the children consistently since her release and had not completed a second drug-and-alcohol assessment as ordered. She explained that Sutton had tested positive for cocaine on 15 December 2015 and that day, the day of the termination hearing. Hatchett also explained that a Pulaski County DHS worker attempted to visit Sutton's new apartment on February 10 and March 7, but those attempts were unsuccessful. She stated that DHS was seeking termination because "we're at the same place we were when the kids got picked up, because she was testing positive back in 2014. Here we are almost two years later and, you know, it's still the same." Hatchett also testified that the children were adoptable and faced potential harm if returned to Sutton.

Judith Hicks, a program assistant with DHS, testified that she helped transport the children and supervised visits with the children. She explained that she communicated with Sutton primarily via text and that Sutton was supposed to contact her on Sundays to arrange

visits for the coming week. Hicks described numerous instances of Sutton canceling a scheduled visit because she had to work or not contacting Hicks until Monday, after the week's visitation schedule had been set, to attempt to arrange a visit. She also described one instance in which a visitation did not occur because DHS was shorthanded.

Sutton testified that she lives in a three-bedroom apartment in Little Rock and was currently employed at Wendy's. She stated that she did not have a car or a valid driver's license. She explained that she had gone to prison for violating probation and that since her release, she had visited her probation officer as ordered. She acknowledged that she had tested positive for cocaine that day but said that it had been over a month and half since she had used cocaine. She denied having a substance-abuse problem. She testified that she receives her work schedule on Sunday or Monday but that it can also change during the week, requiring her to cancel visitation. She opined that her drug addiction had "slowed down" but agreed that it had not stopped. She agreed that she was not prepared to take care of her children at that time but asked for additional time to work on her "finance [sic] situation."

On 30 March 2016, the court entered an order terminating Sutton's parental rights, citing the "out-of-custody-for-twelve-months and failure-to-remedy" ground and the "sentenced in a criminal proceeding for a substantial period of time in the child's life" ground. This timely appeal followed.

We review termination-of-parental-rights cases de novo. *Hune v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 543. Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to

the detriment or destruction of the health and well–being of the child.  *Id.*  Grounds for termination of parental rights must be proved by clear and convincing evidence.  *Id.*  Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established.  *Id.*  The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous.  *Id.*  A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.  *Id.*  In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to assess the witnesses' credibility.  *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

The goal of Arkansas Code Annotated section 9-27-341 is to provide permanency in a minor child's life in circumstances in which returning the child to the family home is contrary to the minor's health, safety, or welfare, and the evidence demonstrates that a return to the home cannot be accomplished in a reasonable period of time as viewed from the minor child's perspective.  *Id.*; Ark. Code Ann. § 9-27-341(a)(3) (Repl. 2015).  Parental rights may be terminated if clear and convincing evidence shows (1) that it is in the child's best interest, and (2) that statutory grounds have been proved.  *Hune, supra.*  One statutory ground is sufficient to support the termination of parental rights.  *Geatches v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 344, ___ S.W.3d ___.

On appeal, Sutton challenges both statutory grounds for termination found by the circuit court.  The first ground, the "out-of-custody for twelve months and failure-to-

remedy" ground, requires the circuit court to find that "a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent." Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*). This section requires DHS to prove, among other things, that it made a meaningful effort to rehabilitate the parent and to correct the conditions that caused removal. *Jones-Lee v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 160, 316 S.W.3d 261. In the termination order, the circuit court noted that Sutton had completed some requirements of the case plan, including submitting to a drug-and-alcohol assessment and random drug screens and receiving a certificate of completion for drug treatment while incarcerated. But the court also found that

> the mother has not availed herself of substance abuse treatment outside of the Arkansas Department of Corrections as her drug issue has not been remedied. The mother tested positive for cocaine today, March 8, 2016. The mother admits she does not have enough income to support both herself and her children at this time and does not have a driver's license or vehicle.

The court concluded by noting that "[b]oth the Department and the mother should have made better efforts to coordinate visitation among the parties."

Sutton argues that despite her obvious drug problem, the only drug-addiction-related service offered to her upon her release from incarceration was random drug screens, and those did not begin until December 2015, which was several months after her release. She was not provided a new referral for a drug-and-alcohol assessment, nor was she ordered to participate in any kind of treatment program. She also cites to the circuit court's order

stating that DHS should have made better efforts to facilitate visitation and argues that DHS failed to timely conduct a walk-through of her new apartment. Overall, she asserts, this evidence shows "an abject failure on the part of the Department to offer meaningful services to [Sutton] and her children in an effort to ensure the reunification of this family."

In response, DHS argues that it offered a number of services to Sutton, including visitation, a drug-and-alcohol assessment, and drug screens. It also asserts that because Sutton did not raise any objection to the DHS services or lack thereof at the termination hearing, she has waived the issue on appeal. *See Weathers v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 142, 433 S.W.3d 271 (citing *Gilmore v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 614, 379 S.W.3d 501).

On the merits, DHS argues that while Sutton blames DHS for visitation difficulties, it was her choice to move to Pulaski County, "further thwarting and complicating visitation," and it was also Sutton who canceled the second drug-and-alcohol assessment and never rescheduled. Finally, DHS says that Sutton never specified at the termination hearing what services should have been offered to her, she simply asked for more time, but the juveniles' need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances, and courts will not enforce parental rights to the detriment or destruction of the health and well-being of the juveniles. *See Contreras v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 604, 474 S.W.3d 510.

We decline to find that the issue has been waived. At the termination hearing, Sutton's counsel did make a motion for directed verdict and argued that

> [t]he Department has not, even though they claim that there are positive drug
> screens, which we've had false positives before that, they haven't sent her to

any type of drug and alcohol assessment for the last year; even though they're complaining that she's addicted to drugs. They haven't done anything in order to remedy that. The visitation issue is troubling at best. They testified that she hasn't visited with her children. . . . Ms. Hicks' [sic] truthful testimony and her text messages were that they were in contact three or four days a week trying to arrange the visitation with the children. That she would contact Ms. Hicks with the visitation schedule only to have Ms. Hatchett tell her that the visitations were not going to take place. And that outside Ms. Hicks she couldn't get in contact with anyone. We don't think that the Department has met their–

At that point, counsel is interrupted by the court and never finishes that sentence. But it appears counsel was arguing exactly what Sutton is arguing here—that the services provided were not meaningful. For that reason, we will address the merits of Sutton's argument.

Over the course of this case, which began in September 2013, Sutton was offered parenting classes, a drug-and-alcohol assessment, drug screens, outpatient drug treatment, transportation assistance, referrals, and home visits. Because she continued to test positive for drugs, a second drug-and-alcohol assessment was scheduled, but Sutton canceled that appointment. The appointment was rescheduled in March 2014, but Sutton was a no-show. A third appointment was scheduled in June 2014, but Sutton did not attend that assessment, either, and was incarcerated shortly thereafter. Sutton limits her argument to the services offered after her release from incarceration, in August 2015, but by that point, the goal of the case had changed to adoption. And DHS did continue to offer visitation, transportation, and drug screens. In its simplest terms, the children in this case were taken into custody because of Sutton's drug use, and over two years later, Sutton continued to test positive for drugs. The circuit court did not err in finding that the children had been out of Sutton's custody for twelve months and that she had failed to remedy the conditions

that caused removal. Because we affirm on this point, we need not reach Sutton's argument regarding the "sentenced for a substantial period of time in the child's life" ground.

Affirmed.

ABRAMSON and KINARD, JJ., agree.

*Tina Bowers Lee*, Ark. Pub. Defender Comm'n, for appellant.

*Mary Goff*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.