Cite as 2019 Ark. App. 539

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-19-592

| | |
|---|---|
| SHANTEL REDDEN | **Opinion Delivered:** November 13, 2019 |
| APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72JV-17-974] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE STACEY ZIMMERMAN, JUDGE |
| APPELLEES | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Shantel Redden appeals from the termination of her parental rights to her children Av.R., Ar.R., Du.H., and Do.H., who range in age from six to ten years old.[1] On appeal, Shantel argues that the termination order should be reversed because there was insufficient evidence of statutory grounds and insufficient evidence that the termination was in the children's best interest. We affirm.

We review termination-of-parental-rights cases de novo. *Mitchell v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 715, 430 S.W.3d 851. At least one statutory ground must exist, in addition to finding that is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 (Supp. 2017); *M.T. v.*

---

[1]The putative father of Du.H. and Do.H. is Durod Humbert, who did not participate in the case and is currently in prison. The trial court found that Durod's parental rights never attached, and he is not a party to this appeal. The father of Av.R. and Ar.R. is unknown.

*Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997). Clear and convincing evidence is that degree of proof that will produce in the factfinder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

On December 27, 2016, appellee Arkansas Department of Human Services (DHS) opened a protective-services case due to a true finding of threat of harm to the children based on allegations that Durod had committed aggravated assault against a household member. Shortly thereafter, there was a true finding of inadequate supervision by Shantel. During the protective-services case, the children remained in Shantel's custody. DHS provided Shantel with multiple services, such as counseling, home visits, a drug-and-alcohol assessment, drug screens, and parenting classes.

On December 18, 2017, DHS filed a petition for dependency-neglect. DHS alleged that the children were dependent-neglected and at substantial risk of serious harm as a result of Shantel's parental unfitness. An attached affidavit of a family-service worker stated that Shantel had failed to avail herself of the services provided in the protective-services case. During the case, Shantel had been arrested for terroristic threatening, possession of a controlled substance, and possession of drug paraphernalia. Shantel was listed as a suspect on charges of breaking or entering and felony theft. Shantel had tested positive for methamphetamine and THC. The

affidavit stated that Shantel had been repeatedly contacted by the school about the children's need for counseling but that Shantel had failed to get them into counseling.

On January 4, 2018, the trial court entered an order finding probable cause that the children were dependent-neglected and placing them in emergency DHS custody. The trial court found that, despite reasonable DHS efforts to provide services to prevent removal, immediate removal of the children from Shantel's custody was necessary to protect the children's health and safety.

The trial court entered an adjudication order on February 7, 2018, finding the children dependent-neglected. The trial court found that Shantel had been uncooperative with DHS and had been arrested more than once during the protective-services case. The trial court found that Shantel had tested positive for THC and methamphetamine, and that her youngest child tested positive for methamphetamine on a hair-follicle test. The goal of the case was reunification. Shantel was ordered to cooperate with DHS, participate in counseling, remain drug free, submit to a drug-and-alcohol assessment and to drug screens, maintain stable housing and employment, and resolve all criminal charges.

On May 21, 2018, the trial court entered a review order finding that continued DHS custody was necessary to protect the children's health and safety. The trial court found that Shantel had complied with some of the case plan but had not refrained from illegal drug use or obtained stable housing and employment. Another review order was entered on October 24, 2018, wherein the trial court made the same findings.

On December 7, 2018, the trial court entered a permanency-planning order, wherein the case goal was changed from reunification to termination of parental rights and adoption. The trial court again found that although Shantel had complied with some of the case plan, she

3

had not refrained from illegal drug use or obtained stable housing and employment. The trial court found that Shantel had tested positive for methamphetamine on November 9, 2018. The trial court further found that Shantel had been arrested three times, most recently in October 2018, since the children were removed from her custody. The trial court found that Shantel had exposed the children to chaos, as evidenced by their behaviors and diagnoses of posttraumatic stress disorder, and the trial court found that Shantel had instructed the children to disobey their foster parents so they could return home.

On January 24, 2019, DHS filed a petition to terminate Shantel's parental rights. The termination hearing was held on April 5, 2019.

On May 6, 2019, the trial court entered an order terminating Shantel's parental rights to her four children. The trial court found by clear and convincing evidence that termination of parental rights was in the children's best interest, and the court specifically considered the likelihood that the children would be adopted, as well as the potential harm of returning them to the custody of their mother as required by Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The trial court also found clear and convincing evidence of these two statutory grounds under subsection (b)(3)(B):

> (i)*(a)* That a juvenile has been adjudicated by the court to be dependent–neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.
>
> . . . .
>
> (vii)*(a)* That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

4

The trial court also made these specific findings:

> The mother failed to make significant measurable progress towards alleviating or mitigating the causes of the juveniles' removal from the home and completing the court orders and requirements of the case plan. The mother has not diligently worked toward reunification. Specifically, the mother has failed to refrain from illegal drug use, resolve criminal charges, and maintain stable housing and employment.
>
> . . . .
>
> The central issue that arose after the filing of the petition for dependency-neglect is the mother's repeated arrests stemming from her illegal drug use. The mother has been arrested several times during the pendency of this case. Specifically, the mother was arrested in June 2018 for Possession of Drug Paraphernalia and was also arrested in October of 2018 for failure to pay fines. The mother was again arrested on December 8, 2018 [for] Possession of Drug Paraphernalia. Continuing this pattern of criminality, the mother was again arrested on December 24, 2018 for Possession of a Controlled Substance; Possession of Drug Paraphernalia; Theft by Receiving; and Violation of Probation. Additionally, the mother was arrested most recently on January 18, 2019 for Failure to Appear.
>
> . . . .
>
> The Court finds that the mother is not fit or stable today and has not maintained sobriety, as she is still using drugs, namely methamphetamine. The mother has not demonstrated the ability to provide for the children as she has not maintained stable housing throughout the case. The mother's repeated arrests throughout this case, which largely stemmed from her illegal drug use, demonstrates that the mother cannot safely parent her children. The mother is clearly not in a position to take these children home today. The Court finds that continued contact with the mother would be detrimental to the children's well-being.

Family-service worker Chris Hamby testified at the termination hearing. Mr. Hamby stated that he has been the caseworker assigned to this case since the beginning of 2019. Mr. Hamby testified that Shantel had maintained weekly contact with DHS and that, when she was not incarcerated, she regularly visited the children. He also testified that Shantel had not maintained stable employment and was unemployed. Mr. Hamby stated that Shantel was living with her mother.

Mr. Hamby indicated that Shantel's continued drug use and incarcerations were the primary impediments to her regaining custody of her children. He stated that during the case there was a repeated pattern of Shantel being arrested for drug offenses. He stated that Shantel would make some progress but would then "be incarcerated, and everything kind of goes to a standstill and has to restart, and we've done that multiple times throughout the life of the case." Mr. Hamby testified that Shantel tested positive for methamphetamine just six days before the termination hearing, although Shantel contested the result.

Mr. Hamby indicated that the children were progressing in foster care and that all four children are adoptable. Mr. Hamby stated that DHS "fears that it is most certainly contrary to the welfare of these minors to return home to what we view as instability and inconsistency that we've seen throughout the life of this case." Mr. Hamby recommended termination of Shantel's parental rights to give the children a greater sense of permanency. On cross-examination, Mr. Hamby testified:

> I do not think given three more months that mom could successfully complete the case plan, because for the reasons I have already outlined. There is a consistent—you know, as consistent as some things have been, the inconsistencies have been consistent. She has been incarcerated, has fallen back into drug use, and these are things that have consistently, over the life of this case, prevented her from being successful. And I have no reason at this point in time, not knowing what the future would hold, to think anything would be different.

Shantel testified on her own behalf and stated that she lives with her mother in her mother's apartment. She stated that she is working on her housing and is on a waiting list. Shantel claimed that her previous caseworker was not providing her with adequate services, but that she has a better relationship with Mr. Hamby and she has made progress since he took over the case. Shantel stated that she has been visiting her children and that the visits go well.

Shantel acknowledged her history of incarcerations. She stated that during the case she had gone to jail four times—twice for possession of drug paraphernalia and twice for failure to appear. Shantel stated that she had never spent more than a month in jail and was last arrested on January 18, 2019. Shantel stated that she has a pending charge for possessing drug paraphernalia and is on probation for previous charges.

Shantel testified that she loves her children and that, even given her recent drug history, she thought she could safely parent them. She stated that she is receiving food stamps and would support her children any way she could. Shantel thought that she had not been provided the services that she needed and that her parental rights should not be terminated. She thought that if she had some additional time with Mr. Hamby as her caseworker, she could complete the case plan.

On appeal from the termination of her parental rights, Shantel first challenges the sufficiency of the evidence to support either of the statutory grounds found by the trial court. The two statutory grounds found by the trial court pursuant to Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* and (vii)*(a)* are commonly referred to as the "twelve-month failure to remedy" ground and the "subsequent factors" ground.

Shantel argues that the "twelve-month failure to remedy" ground was not satisfied because the trial court relied on certain factors that arose *after* the children's removal from her custody, including her subsequent arrests and her failure to comply with the case plan. Shantel also argues that there was a lack of proof as to the "subsequent factors" ground because Shantel was drug tested only twice after the children's removal, which she claims was not sufficient to support a finding of sustained illegal drug use. Shantel further claims that while the record showed that she "no doubt struggled to get on her feet throughout the case," it did not

7

demonstrate that she manifested the indifference or incapacity to remedy the subsequent issues. Shantel asserts that she had been making measurable progress since caseworker Mr. Hamby took over the case and that her parental rights should not have been terminated.

Although the trial court found two grounds for termination, only one ground is necessary to support the termination. *Brown v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 303, 521 S.W.3d 183. We conclude that the trial court did not clearly err in finding that DHS proved the "subsequent factors" ground.

After Shantel's children were removed from her custody, she was ordered to obtain stable housing and employment, remain drug free, and resolve her criminal charges. The record shows that at the time of the termination hearing, Shantel was unemployed and lacked her own stable housing. More importantly, Shantel twice tested positive for methamphetamine—once on November 9, 2018, and once on March 31, 2019, which was just six days before the termination hearing.[2] Equally as concerning was Shantel's four periods of incarceration—occurring after the children's removal—based on new criminal charges related to Shantel's drug use. These periods of incarceration significantly impeded the efforts to reunify Shantel with her children and demonstrated Shantel's indifference to remedying her drug problem and the criminal issues that prevented the return of the children to her custody. We have held that a parent's lack of compliance with the case plan and court orders, including testing positive for drugs, supports termination of parental rights under the "subsequent factors" ground. *Furnish*

---

[2]These were the only two times Shantel was drug tested after the children's removal, and the parties disputed whether DHS had asked Shantel to submit to any additional drug screens during the case. In the trial court's permanency-planning order, it found from the testimony that Shantel had avoided scheduled drug screens.

*v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 511, 529 S.W.3d 684. Here, there was evidence from which the trial court could conclude that, despite the offer of appropriate DHS services, other factors arose demonstrating that placement of the children with Shantel was contrary to their safety and welfare. These factors included Shantel's demonstrated instability, her repeated methamphetamine use, and her multiple incarcerations, which the trial court found Shantel was either incapable of, or indifferent to, remedying. On this record, we hold that the trial court's finding that DHS proved the "subsequent factors" ground by clear and convincing evidence was not clearly erroneous.

Shantel's remaining argument is that there was insufficient evidence that termination of parental rights was in the best interest of the children. Shantel does not dispute that her children are adoptable. Instead, she argues that the trial court's best-interest finding was flawed due to a lack of evidence that the children would be subject to potential harm if returned to her custody.

We hold that the trial court's potential-harm finding was not clearly erroneous; nor was the trial court's finding that termination was in the children's best interest. In considering potential harm caused by returning a child to a parent, the trial court is not required to find that actual harm would result. *Middleton v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 97, 572 S.W.3d 410. Potential harm must be viewed in broad terms, including the harm the child suffers from the lack of stability in a permanent home. *Id.* We have held that continued drug use demonstrates potential harm sufficient to support a best-interest finding in a termination-of-parental-rights case. *Tillman v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 119. Moreover, a court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody. *Middleton*, *supra*.

9

In its assessment of potential harm in the termination order, the trial court found that Shantel was still using methamphetamine; that she had not demonstrated the ability to provide for her children or maintain stable housing; and that her repeated arrests throughout the case, which largely stemmed from her illegal drug use, demonstrated that Shantel cannot safely parent her children. The record supports these findings by the trial court, and we conclude that the termination of her parental rights was not clearly erroneous.

Affirmed.

ABRAMSON and VIRDEN, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.