Cite as 2022 Ark. App. 331

# ARKANSAS COURT OF APPEALS

DIVISION I

No. CV-22-52

| | |
|---|---|
| MICHELLE DEBIASSE AND MARK DEBIASSE | **Opinion Delivered** September 14, 2022 |
| APPELLANTS | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT |
| V. | [NO. 26JV-19-239] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE LYNN WILLIAMS, JUDGE |
| APPELLEES | AFFIRMED |

## WAYMOND M. BROWN, Judge

Michelle Debiasse and Mark Debiasse bring separate appeals from the Garland County Circuit Court's order terminating their parental rights to their children, M.D., B.D., and K.B. Finding their arguments either not preserved or without merit, we affirm the circuit court's termination order as to both appellants.

The Arkansas Department of Human Services (DHS) took emergency custody of M.D., B.D., and K.B. on September 13, 2019, following a report that at school, nine-year-old B.D. disclosed sexual abuse by her mother's boyfriend, Whitney Herbert. Michelle initially denied any knowledge of the sexual-abuse allegations. She then admitted knowing that another adult male, Jason Halsey, had touched B.D. Finally, Michelle also admitted that B.D. told her that Whitney had touched her "privates" twice. "Due to the disclosed sexual abuse and failure to protect," DHS placed a seventy-two-hour hold on the children. Additionally, it was observed that there was animal feces on the children's beds, and B.D. had head lice. At the time of removal, the children were living with

Michelle. The circuit court entered an ex parte order for emergency custody on September 17, placing custody of the children with DHS. A probable-cause order followed on September 20, finding that probable cause for the children's removal existed and continued to exist. The court also found that Michelle knowingly, intelligently, and with understanding waived probable cause on the record through her attorney. Michelle and Mark were ordered to follow the court's orders and the DHS case plan.

In an order entered on November 14, M.D., B.D., and K.B. were adjudicated dependent-neglected as a result of sexual abuse, neglect, and parental unfitness. Specifically, Michelle failed to take steps to protect B.D. from sexual abuse and allowed Whitney, the alleged abuser, to remain in the home after B.D. had disclosed the sexual abuse. Michelle stipulated to the dependency-neglect findings and agreed that any parental visitation with the children should occur upon the recommendation of the children's therapist. The goal of the case was established as reunification with a concurrent goal of relative or fictive-kin placement. Michelle was ordered to complete a drug-and-alcohol assessment and follow the recommendations thereof; participate in individual and family therapy; participate in outpatient sex-offender treatment; submit to a psychological evaluation and follow the recommendations thereof; submit to drug screens; participate in and attend all scheduled visitation with the children; complete parenting classes; schedule and keep all appointments; obtain and maintain a safe, suitable, and appropriate home for herself and the children; maintain an environment free from illegal substances and other health and safety hazards; obtain and maintain adequate income to support herself and the children; request transportation assistance from DHS forty-eight hours in advance; cooperate with DHS and CASA; permit DHS and CASA to inspect their home; answer the door when DHS or CASA visits; and participate in any service requested by DHS.

For the purposes of the Arkansas Juvenile Code, Mark was determined to be the legal father of the children because he was married to Michelle at the time of each child's birth; the two were still married at the time the children were removed. Michelle and Mark were ordered to maintain consistent contact with the children; demonstrate stability and the ability to provide for the health, safety, and welfare of the children; maintain consistent contact with DHS; and keep DHS informed of their current address.

In its February 5, 2020 review order, the circuit court found Mark was served on or around November 25, 2019 by personal service pursuant to Rule 4 of the Arkansas Rules of Civil Procedure; Mark is a parent for purposes of the Arkansas Juvenile Code because he is and was married to the biological mother at the time of the children's births; and Mark did not contribute to the dependency-neglect of the children because he has resided in another state for some time. The court entered into evidence a report prepared by DHS worker, Carson Taylor; a report of Michelle's psychological evaluation; Michelle's certificate of completion of parenting classes; and a release of information permitting the children's therapist to discuss progress with Michelle's therapist. The court found that due to safety concerns, supervised visitation was in the children's best interest. The goal of the case remained reunification with a concurrent goal of adoption/guardianship/permanent custody. Michelle was found to have complied with the case plan and orders of the court. "Specifically, she is participating in individual counseling, parenting classes, and random drug screens; she completed the psychological evaluation. However, she has no income to support herself or the juveniles. The mother has demonstrated guarded progress toward the goal of the case plan." The court found Mark in noncompliance with the case plan since he had no contact with either DHS or the children.

Visitation between Michelle and the children was held on February 20, 2020. That same evening, B.D. was admitted into Pinnacle Point Hospital, where she remained for seven days. Consequently, upon motion by the children, by and through their attorney ad litem, Kasi Hill Erwin, an order suspending visitation was entered on March 16.

In an agreed review order entered on June 10, the circuit court found the parents unfit and specifically stated,

> The safety concerns that prevent trial placement, return of custody, or other placement with the parents include: parents have not, cannot, or will not provide supervision necessary to protect the juveniles from potentially dangerous harm; father is unwilling or is unable to meet the juveniles' need for food, clothing, shelter, and/or medical or mental health care; due to the history of sexual abuse within the family, the juveniles' safety remains an immediate concern. Additionally, no contact orders issued in the mother's criminal cases prevent placement of the juveniles in her care.
>
> . . . .
>
> The parents' visitation shall be supervised by the Department or its designee and shall occur at its reasonable discretion upon the recommendation of the juveniles' therapist(s). Visitation of all the juveniles with the mother shall not occur while there remain no contact orders in place in case 26CR-20-264 and -265.

Although Michelle was found to have complied with the case plan and orders of the court due to her completion of parenting education, participation in individual counseling, and random drug screens, the court maintained she had no income to support herself or the children, and the condition of her home was inappropriate for children. It was also noted that she had recently been criminally charged for the abuse and neglect of the children that led to the present case. Mark was again found to have not complied with the case plan and orders of the court. He had no contact with either DHS or the minor children and had failed to demonstrate progress toward the case goal. The court found that the services provided had not benefited Mark in remedying the issues that prevent the safe return

4

of the children because he had not participated in the services provided to him. The parents were again ordered to comply with the previous orders of the court.

A permanency-planning hearing was held on September 9. At that time, the circuit court stated that it could not

> find that any parent is complying with the established case plan and orders of the Court, making significant and measurable progress toward achieving the goals established in the case plan, or diligently working toward reunification or placement in the home of the parent. No parent has met their burden to demonstrate genuine, sustainable investment in completing the requirements of the case plan and following the orders of the Court in order to authorize a plan to return or be placed in the home as the permanency goal.

The order authorized a plan for adoption with DHS filing a petition for termination of parental rights of both parents.

Accordingly, on October 8, DHS filed a petition seeking to terminate Michelle's and Mark's parental rights, alleging multiple statutory grounds and stating that termination was in the best interest of the children.

After granting multiple continuance motions, the termination-of-parental-rights hearing was ultimately held. Following the October 27, 2021 hearing, the circuit court entered an order terminating both Michelle's and Mark's parental rights to M.D., B.D., and K.B. Both Michelle and Mark timely appeal from the termination order.

This court reviews termination-of-parental-rights cases de novo.[1] Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established.[2] The

[1]*Dinkins v. Ark. Dep't of Hum. Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

[2]*Tillman v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 119.

5

appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous.[3] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[4] In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses.[5]

To terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent.[6] The circuit court must also find by clear and convincing evidence that one or more statutory grounds for termination exist.[7] Proof of only one statutory ground is sufficient to terminate parental rights.[8] Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child.[9] The intent behind the termination-of-parental-rights statute is to

---

[3]*Id.*

[4]*Id.*

[5]*Id.*

[6]Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii) (Supp. 2021).

[7]Ark. Code Ann. § 9-27-341(b)(3)(B).
[8]*Tillman*, *supra*.

[9]*Id.*

provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective.[10]

We will address Michelle's separate appeal first. On appeal, she does not challenge the circuit court's finding that termination of her parental rights was in the children's best interest. Michelle argues only that the evidence was insufficient to support the statutory grounds for termination.

The circuit court terminated Michelle's parental rights on the following grounds: failure to remedy; failure to provide significant material support; failure to maintain meaningful contact; subsequent factors; and aggravated circumstances. Although the circuit court terminated Michelle's parental rights on five statutory grounds, only one ground is necessary to affirm the termination.[11]

A circuit court may terminate parental rights on the basis of the aggravated-circumstances ground if there is little likelihood that further services will result in successful reunification.[12] A finding of aggravated circumstances does not require that DHS prove that meaningful services toward reunification were provided.[13] With regard to the aggravated-circumstances ground, in its termination order, the circuit court found "there is little likelihood that services to the family will result in successful reunification as there is no other service that could be provided to the parents that has not already been provided or offered." Michelle asserts the court failed to state "why" continued services to the family was unlikely to result in successful reunification. She contends that she

---

[10]Ark. Code Ann. § 9-27-341(a)(3).

[11]*Redden v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 539, 589 S.W.3d 401.
[12]*See* Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(A)–(B)(i)*.

[13]*Cloninger v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 282.

7

complied with the case plan, attended counseling, completed a psychological evaluation, completed parenting education, and participated in random drug screens and home visits. Additionally, she asserts that DHS failed to visit her house in the nine months preceding the termination hearing. Michelle argues that due to the lack of regular contact, DHS had no basis to support its opinion that nothing in the home had changed during that time period.

This case began when B.D. disclosed sexual abuse. During the pendency of this case, Michelle was criminally charged for her role in B.D.'s sexual abuse. On the date of the termination hearing, Michelle's criminal charges remained unresolved. DHS caseworker Washburn testified there had been no visitation between Michelle and the children due to a no-contact order in place because of the criminal charges. Washburn stated that while the charges remain outstanding, the children could not be placed with Michelle. Further, Washburn testified that Michelle had not acknowledged the trauma she caused the children and that no further services could be offered to reunify Michelle with her children. A caseworker's testimony that there were no further services to offer the parent that would result in reunification is sufficient to support an aggravated-circumstances finding.[14]

While Michelle argued that termination of her parental rights was erroneous because she complied with the case plan, it is not the completion of the case plan that is determinative; instead, it is whether the completion of the case plan resulted in making the parent capable of caring for the child.[15] In this case, there was a no-contact order between Michelle and the children, Michelle failed

---

[14]*Collier v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 100, 641 S.W.3d 67.

[15]*See Salinas v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 272, 599 S.W.3d 728.

to achieve stable housing and income, and she had pending charges that involved her children, all of which rendered her incapable of caring for her children.

Moreover, despite Michelle's argument that the circuit court's aggravated-circumstances finding was clearly erroneous because DHS failed to maintain contact and make regular visits, we find no error. A finding of aggravated circumstances does not require DHS to prove that meaningful services were provided.[16]

Although the circuit court terminated Michelle's parental rights on five statutory grounds, only one ground is necessary to affirm the termination.[17] Therefore, because we affirm the circuit court's finding of aggravated circumstances, it is unnecessary to address the evidence supporting the remaining statutory grounds on which termination of Michelle's parental rights was based. Also, because Michelle raised no challenge as to the circuit court's finding that termination was in the children's best interest, it is waived on appeal.[18]

Before turning to Mark's arguments pertaining to the sufficiency of the evidence supporting termination of his parental rights, we must first address threshold issues.

Mark asserts that he was identified by DHS as the legal father of the children at the outset of the case because he was married to Michelle when each child was born, and they remained married at the time the children were removed from Michelle's custody. He argues that because of this, he had a right to appointed counsel from the beginning of the proceedings. Mark further argues that the

---

[16]*Cloninger*, *supra*.

[17]*Redden v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 539, 589 S.W.3d 401.
[18]*Owen v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 413, 587 S.W.3d 586.

circuit court erred in terminating his parental rights because DHS failed to (1) communicate with him; (2) provide him with the case plan and pleadings; and (3) secure his attendance or participation in any of the hearings prior to the termination hearing. While he now emphatically makes these arguments—right to counsel, lack of service, and a multitude of due-process complaints claiming that although he was identified as a party, he was not treated as a party in the case—Mark failed to preserve any of the issues for our review. He acknowledges that the issues were not preserved but contends that it was the circuit court's duty to protect his due-process rights. We will not consider an argument, even a constitutional one, raised for the first time on appeal.[19]

For his next point on appeal, Mark contends that DHS failed to prove the statutory grounds relied on to support the termination of his parental rights. In addition to the five grounds relied on to support the termination of Michelle's parental rights, the circuit court also found that sufficient evidence was presented to support the termination of Mark's parental rights on the abandonment ground.

As previously stated, only one ground is necessary to affirm the termination of parental rights.[20] For our purposes, we will address the termination of Mark's parental rights on the finding that sufficient evidence supported the aggravated-circumstances ground.

At the time of the termination hearing and for a large portion of the case, Mark was incarcerated in New Jersey on charges related to child pornography. In *Kohlman v. Arkansas Department of Human Services*,[21] the court found that Kohlman's criminal misconduct and incarceration for the

---

[19]*Jones v. Ark. Dep't of Hum. Servs.*, 361 Ark. 164, 205 S.W.3d 778 (2005).
[20]*Redden*, *supra*.

[21]2018 Ark. App. 164, 544 S.W.3d 595.

majority of the case served as an impediment to successful reunification sufficient to support a finding of aggravated circumstances.

Further, the evidence demonstrated that Mark had never met the youngest child, K.B., and had not visited the other children in several years. Due to his out-of-state incarceration, DHS testified that there were no services it could provide to achieve reunification. An out-of-state parent's failure to contact his children throughout the case is sufficient evidence to support an aggravated-circumstances finding.[22] A finding of aggravated circumstances is supported if there is testimony that no additional services could be offered to make the parent a fit and appropriate parent.[23]

To the extent Mark argues that the aggravated-circumstances ground requires DHS to prove that it provided services, his argument fails. The law is clear "a finding of aggravated circumstances does not require that DHS prove that meaningful services toward reunification were provided."[24]

For his final point, Mark challenges the circuit court's finding that termination of his parental rights was in the best interest of the children. An analysis of best interest includes consideration of the likelihood the children will be adopted and of the potential harm caused by returning custody of the children to the parent.[25] Mark does not specifically take issue with either the adoptability or the potential-harm prong. Instead, he argues the circuit court's finding of best interest was clearly erroneous because DHS's failure to contact him and provide him due process resulted in a complete

---

[22]*Louissaint v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 494, 611 S.W.3d 709.

[23]*See Anderson v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 791, 387 S.W.3d 311.
[24]*Cloninger*, *supra*.

[25]*Norton v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 285.

failure to inquire about any relatives of his for potential relative placement. He contends that DHS's failure to consider familial relationships is against the public policy of the state to preserve and strengthen family ties. However, because Mark failed to raise this argument below, it is not preserved for appellate review.[26] Accordingly, we affirm the circuit court's finding that termination of Mark's parental rights was in the best interests of the children.

Because the findings of the circuit court are supported by clear and convincing evidence and because certain arguments on appeal were not preserved for our review, we affirm the termination of both Michelle's and Mark's parental rights.

Affirmed.

VIRDEN and GRUBER, JJ., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for separate appellant Mark Debiasse.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for separate appellant Michelle Debiasse.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Janet Lawrence*, attorney ad litem for minor children.

---

[26]*Cole v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 481, 611 S.W.3d 218.