Cite as 2023 Ark. App. 56

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-22-507

| | |
|---|---|
| LEONARD FULMER | Opinion Delivered February 8, 2023 |
| | |
| | APPEAL FROM THE LOGAN COUNTY CIRCUIT COURT, NORTHERN DISTRICT |
| APPELLANT | [NO. 42PJV-18-30] |
| V. | |
| | HONORABLE TERRY M. SULLIVAN, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | |
| APPELLEES | AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant Leonard Fulmer appeals the Logan County Circuit Court's order terminating his parental rights to his daughter, Minor Child 1 (MC1).[1] He argues on appeal that the evidence is insufficient to support the termination or the finding that termination was in the best interest of MC1. We affirm.[2]

The Arkansas Department of Human Services (DHS) had been involved with the family on and off since 2018. In the summer of 2020, DHS had a true finding regarding

---

[1]MC1's date of birth is October 26, 2009.

[2]The parental rights of MC1's mother, Elizabeth Elliot, was terminated in a separate proceeding, and she is not a party to this appeal.

Minor Child 2 (MC2),[3] MC1's biological sibling and whom appellant had guardianship over due to appellant's stepson, Bruce McGahey, sexually assaulting MC2. Appellant's wife, Lori Fulmer, refused to believe that her son had committed any sexual act against MC2 and verbally abused her. MC2 contacted the case worker, Brandy Ezell, on February 25, 2021, threatening to run away if she was not removed from the home. On February 26, when interviewed by Ezell, MC2 stated that she did not feel safe in the home and that she feared Lori. She also stated that appellant and Lori were on drugs and were selling drugs out of the house. She showed bruising on her butt that she attributed to appellant spanking her. MC1 stated that MC2 would bring a lot of trouble on herself by not doing what she was told. As a result of the interview, a hotline call was made, and a report was accepted for abuse and neglect against both appellant and Lori. On March 8, a call was made by a relative stating that MC2 was in fear for her life and needed to be removed from the home. Both children were interviewed at school, and although MC2 reiterated what she had said in February, MC1 denied any kind of abuse or neglect. Appellant was subsequently contacted, and he admitted spanking MC2 due to bad grades and her allegedly posting a naked video of herself on TikTok. Another report was made on March 9 alleging that appellant and Lori were grooming MC1 for the "real world" by having her undress in front of appellant and touch his penis. The girls were taken to the Hamilton Center for Child Advocacy in Fort Smith, and during the interview, they both admitted drug use in the home and that Lori yells a lot.

---

[3]MC2's date of birth is June 4, 2008.

MC2 also stated that Lori "grabs" MC2's vagina, talks about how big MC2's "boobs" are, and discusses appellant's penis size in front of her. MC2 said that appellant tries to make Lori stop, but he cannot. This resulted in a pending investigation for sexual abuse against appellant and Lori. While at the Hamilton Center, appellant was drug screened and was positive for amphetamines, methamphetamine, buprenorphine, oxycodone, and THC. Appellant admitted having a medical marijuana card and prescriptions for Suboxone, gabapentin, and Celebrex. He also admitted taking Adderall while fishing and taking methamphetamine a week earlier. The girls were removed for suspected sexual abuse and failure to protect.

DHS filed a petition for emergency custody and dependency-neglect, outlining the above fact in an accompanying affidavit. The petition indicated that the girls were dependent-neglected due to neglect and parental unfitness. The circuit court issued an ex parte order for emergency custody that same day. A probable-cause hearing took place on March 17, and in the order filed on April 20, the circuit court found probable cause for granting DHS emergency custody of MC1. At a subsequent adjudication hearing, appellant stipulated that MC1 was dependent-neglected based on substance abuse in the home. The circuit court found that appellant should no longer be MC2's guardian. In the order filed on May 3, the circuit court ordered appellant not to allow any visitation or any other contact between Lori and MC1. Appellant was also ordered to attend a case-plan staffing and comply with the services—specifically, obtain and maintain safe, stable and appropriate housing; obtain and maintain income sufficient to support the family; obtain and maintain safe and

3

reliable transportation; comply with random drug screens, hair-follicle tests, and alcohol swabs; attend and complete a drug-and-alcohol treatment and comply with resulting recommendations; attend and complete parenting class and demonstrate the skills learned at visitations; obtain and maintain sobriety; keep DHS apprised of his current contact information and any changes; keep the DHS apprised of any significant life events, and visit MC1 as recommended. The goal of the case was reunification.

A review hearing took place on August 18. In the order entered on September 20, the circuit court found that appellant had partially complied with the case plan. The order stated in pertinent part:

12. The parent, Leonard Fulmer, has partially complied with the case plan and the orders of the Court. Specifically, the father has a clean and appropriate home; has transportation; completed his drug and alcohol assessment; completed his psychological evaluation; has been attending weekly group counseling and individual counseling sessions; has been attending parenting classes without violence; and has somewhat complied wit the case plan. He has missed four group sessions and three individual sessions in the past three months. The parent, Leonard Fulmer, has demonstrated progress towards the goal of the case plan as he has partially complied with the services, but those services have not fully benefitted the parent in remedying the issues that prevent the safe return of the juvenile, [MC1]. The father continues to not understand or acknowledge the abuse that the children experienced while in his home, thus [making him] unable to meet the emotional needs of his child. The father continues to have issues with substance abuse and/or mismanagement of his prescription medication. During a home visit, Mr. Fulmer was missing a significant amount of his prescription suboxone when 22 of his trips were missing. Further, Mr. Fulmer continues to maintain the relationship with Lori Fulmer and continues to be married to her when she was an offending caregiver resulting in his child being placed in the Department's care. He continues to have inappropriate people in and out of the home. The Court finds that the child cannot be placed with Leonard Fulmer at this time, no can there be unsupervised visits.

4

Appellant was ordered by the circuit court to complete a second psychological evaluation. The case's goal remained reunification.

Another review hearing took place on December 15. In the order entered on January 7, 2022,[4] the circuit court found that appellant had minimally complied with the case plan and goals of the case, and that his progress was "backwards from the last hearing." The circuit court found that Lori was still an issue and that she had been present at appellant's home the day after the last hearing. It found that appellant's and Lori's relationship negatively affected MC1 and reiterated that MC1 was not to be around Lori "in any fashion." The circuit court further stated that it "will not consider placement with Leonard until his wife comes for services and the toxic relationship ends." It noted that although appellant's medical marijuana card had expired, appellant continued to test positive for the drug. The order also stated that appellant "tested positive for meth, and claims it is because his wife spiked his tea and creamer." Visitation with appellant was ordered to remain supervised, and reunification continued to be the goal of the case.

A permanency-planning hearing took place on March 2. In the resulting order filed on March 10, the circuit court found that appellant was not making much progress and that he had admitted in court that "he did use meth previously despite adamantly insisting his wife spiked his drink. Leonard Fulmer testified he did not know why [MC1] was in DHS

---

[4]An amended review order was filed on March 3, but there is no notable change in that order.

5

custody or why the case was opened." The order also noted that appellant had threatened to kill the caseworker. The case's goal was changed to termination and adoption.

DHS filed a petition to terminate appellant's parental rights on March 4. The petition alleged four separate grounds for termination: (1) failure-to-remedy ground,[5] (2) failure-to-support ground,[6] (3) subsequent-other-factors ground,[7] and (4) aggravated-circumstances ground.[8] The termination hearing took place on May 4. The circuit court entered an order on May 17, grating DHS's petition to terminate appellant's parental rights on all grounds except the failure-to-support ground. Appellant's timely appeal followed.

Appellant argues on appeal that the evidence is not sufficient to support the termination of his parental rights based on any ground relied on by the circuit court. Termination-of-parental-rights cases are reviewed de novo on appeal.[9] Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents.[10] DHS must prove by clear and convincing evidence that it is in the juvenile's best interest to terminate parental rights as well as the existence of at least one statutory ground for

---

[5]Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Supp. 2021).

[6]Ark. Code Ann. § 9-27-341(b)(3)(B)(ii)*(a)*.

[7]Ark. Code Ann. § 9-27-341(b)(3)(B)(vii).
[8]Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)*.

[9]*Lancaster v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 557, 566 S.W.3d 484.

[10]*Id.*

termination.[11] Clear and convincing evidence is that degree of proof that will produce a firm conviction in the finder of fact regarding the allegation sought to be established; the question that must be answered on appeal, when the burden of proving a disputed fact in equity is by clear and convincing evidence, is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous.[12] A finding is clearly erroneous when, although there is evidence to support it, the appellate court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made.[13] However, a high degree of deference is given to the circuit court because it is in a far superior position to observe the parties before it and judge the credibility of the witnesses.[14]

The goal of Arkansas Code Annotated section 9-27-341 is to provide permanency in a minor child's life in circumstances in which returning the child to the family home is contrary to the minor's health, safety, or welfare, and the evidence demonstrates that a return to the home cannot be accomplished in a reasonable period of time as viewed from the minor child's perspective.[15] Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the

---

[11]*Id.*

[12]*Id.*

[13]*Id.*

[14]*Id.*

[15]*Sutton v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 459, 503 S.W.3d 842.

child.[16]  The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the juvenile will be adopted and of the potential harm caused by returning custody of the child to the parent.[17]  Each of these requires proof by clear and convincing evidence, which is the degree of proof that will produce in the finder of fact a firm conviction regarding the allegation sought to be established.[18]

One ground relied on by the circuit court when terminating appellant's parental rights to MC1 was the aggravated-circumstances ground, meaning that there is little likelihood that continued services will result in reunification.  The order stated in pertinent part:

> 1)  As shown above, the parent, Leonard Fulmer has failed to comply with the services or orders of the Court and is not making progress in reunification.  Without completion and utilization of services, services cannot, nor will not, benefit the family enough to result in a successful reunification.  The Court has found the parent, Leonard Fulmer, is not making progress in the case and is minimally compliant with the case plan and orders of the Court.  He tested positive for illegal substances and blamed his wife for spiking his tea and creamer.  After adamantly making this claim, he did finally admit that he used meth and the statement that his wife spiked his drink was false.  He has failed to take any responsibility for his actions, and claims he does not know why the case was opened or why the juvenile is in DHS custody.  His actions clearly demonstrate a little likelihood that services to the family would result in a successful reunification.

---

[16]*Watson v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 484, 529 S.W.3d 259.

[17]*Id.*

[18]*Id.*

8

7. Leonard Fulmer has checked the boxes on services, but has shown he has not benefited from the services.

8. The Court has found Leonard Fulmer's wife, Lori, a danger for the juvenile to be around, there has been a true finding regarding her child and Lori did not believe that. She wrote hateful stuff on the juveniles['] room and has refused to come forward for services. Leonard Fulmer has not severed the relationship with Lori, though he has said he cannot afford a divorce at this time. Regardless if Leonard Fulmer gets a divorce or not, the juvenile cannot be placed with [him] with his wife being around the juvenile.

9. Leonard Fulmer has failed to take responsibility in this case and cannot tell the court today why the case was open[ed]. He has never been able to have unsupervised visits, and this case has now been open for fourteen months and there is no indication of when [he] would be able to receive unsupervised visitations.

The circuit court found that termination was in MC1's best interest, having found that she is adoptable and there is a risk for potential harm if she was returned to appellant's custody.

Appellant argues that the circuit court's order terminating his parental rights to MC1 is based on nothing more than speculation and conjecture. He contends that he completed all services required and that the circuit court erred in finding that he minimally complied with the case plan and orders. We agree that the evidence seems to suggest that appellant completed all services required of him. However, completion of case-plan services is irrelevant when the parent continues to make decisions that are contrary to the best interest of the child.[19] Throughout the case, the circuit court found that although appellant was complying with the case plan, he failed to show that he had benefited from the services. At

---

[19]*Black v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 518, 565 S.W.3d 518.

the hearing, Pamela Feemster, supervisor for Logan County DHS, testified that every time DHS tried to loosen the reins, an issue came up with Lori being around. She stated that the case had not even progressed past supervised visits. She further stated there were no other services that could be offered that would lead to reunification. This testimony alone is enough to support a finding of aggravated circumstances.[20] Additionally, appellant was unable to verbalize why the case was opened or why Lori posed any harm to MC1. Even when it seemed as if he understood the answers to those questions at the termination hearing, he qualified them with "I guess." Unfortunately for appellant, the circuit court was not convinced that his completion of the case plan achieved the intended result of making him capable of caring for MC1. The evidence supports the circuit court's finding that appellant's parental rights should be terminated due to aggravated circumstances. To the extent that appellant's appeal is a request for us to reweigh the evidence, it is well settled that we will not reweigh the evidence on appeal, and credibility determinations are left to the circuit court.[21] According, we affirm.

Appellant also argues that the evidence does not support the circuit court's finding that termination is in MC1's best interest. He does not contest that MC1 is adoptable. However, he challenges the circuit court's potential-harm finding if returned to him. In considering the potential harm caused by returning MC1 to appellant, the circuit court is

---

[20]*Debiasse v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 331, 651 S.W.3d 736.

[21]*Newman v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 207, 489 S.W.3d 186.

not required to find that actual harm would result or affirmatively identify a potential harm.[22]    Potential-harm evidence must be viewed in a forward-looking manner and considered in broad terms.[23]  A parent's past behavior is often a good indicator of future behavior.[24]  We conclude that the same evidence that supports the aggravated-circumstances ground of little likelihood of successful reunification is sufficient to support the circuit court's potential-harm finding.  Although appellant went though the motions of completing the case plan, he did little more than just check off the boxes.  He never got to a point where he benefited enough from the services to even have unsupervised visitation with MC1 because he did not appreciate the cause of MC1's removal from the home or why Lori posed a threat to her.

Affirmed.

ABRAMSON and GLADWIN, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.

---

[22]*Kloss v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 389, 585 S.W.3d 725.

[23]*Tillman v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 119.

[24]*Shaffer v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 208, 489 S.W.3d 182.